# EXHIBIT C

| Less Than 2 Years | 500 – 999 Hours | $ 25.00 |

### 3. Conditional Bonus Pay

Conditional Bonus Pay is any combination of bonus pay as provided by the company, but can have conditions, stipulations and different terms.

## CONFIDENTIALITY, NONDISCLOSURE, NON-SOLICITATION, NON-COMPETITION, AND INVENTIONS AGREEMENT

In consideration of Employee's or Independent Contractor's, whose name appears below, employment or hire by Nixon Engineering, LLC (the "Company"), including the compensation to be paid to Employee/Independent Contractor (employee and independent contractor are considered the same for the purposes of this contract/agreement when either term is used herein), benefits made available, the cost of training, the sharing of confidential information and the use of that information in the performance of Employee's job, the reputation and goodwill of the Company as utilized by Employee in serving the customers, the mutual promises herein contained, and other good and valuable consideration, the Company and Employee/Independent Contractor agree as follows:

1.   CONFIDENTIALITY AND COMPETITIVE ACTIVITIES.

   (a)   Confidentiality. Employee acknowledges and agrees the Company has provided to Employee and/or will provide to Employee on an ongoing basis during the period of Employee's employment trade secrets and other confidential matters of the Company and its customers, which matters include, but are not limited to, information about costs, profits, markets, sales, computer programs and systems, trade secrets, technologies, and other business ideas; pilot car processes; traffic control management, process and procedures; records, customer lists, names, addresses, telephone numbers, and other pertinent information of customers and/or potential customers; customer files, and customer account information; supplier lists and plans for future developments; and information of any other kind not known within the Company's industry generally (hereinafter, collectively, "Confidential Matters").   Recognizing that the Company has provided and will continue to provide such Confidential Matters to Employee, and recognizing further that Employee cannot perform his or her job without such Confidential Matters, Employee agrees:

   (i)  To keep secret all Confidential Matters of the Company, and not to disclose them to anyone outside of the Company or its subsidiaries or affiliates, or otherwise use them or use Employee's knowledge of them for any purpose, either during or after Employee's employment with the Company, except with the Company's prior written consent; provided, however, that Employee may use the Confidential Matters for the benefit of the Company to the extent such use is (1) in the ordinary course of the Company's business and (2) as may be necessary to fulfill the responsibilities of Employee's position with the Company, and

   (ii)   To deliver promptly to the Company at the termination of Employee's employment with the Company, or at any time the Company may request, all memoranda, notices, records, reports, hardware, software, computer data, and other documents and things (and all copies thereof, in any storage media) relating to the business of the Company, including, but not limited to, Confidential Matters, which Employee may then possess or have under Employee's control.

Notwithstanding any of the foregoing, the term "Confidential Matters" does not include information that (1) Employee is compelled to disclose by judicial or administrative process, or (2) is or becomes generally available to the public other than as a result of any disclosure by Employee.

   (b)   Prior Information and Agreements.   Employee represents and warrants to the Company that Employee has not entered into any agreement that restricts, limits or prevents Employee from performing services for the Company.  Employee will not use any confidential information or intellectual property of any former employer or other third party in connection with Employee's work for the Company without the prior written authorization of the Company and such former employer or other third party.

   (c)   Work for Hire.   For purposes of this Agreement, the term "Contract Works" shall mean all drawings, plans, reports, designs, specifications, computer software, and other works of authorship created by Employee, either alone or in cooperation with others, during the term of employment with the Company that (i) are created during the performance of Employee's duties and responsibilities to the Company, (ii)

3643

relate to the Company's business, or (iii) are created using the Company's funds, facilities, resources, personnel, equipment, materials or information. Without limiting any of the Company's rights under the law, all right, title and interest in and to the Contract Works and all copyrights therein throughout the world shall be and remain the sole property of the Company, and the Contract Works shall be considered a "work made for hire" within the meaning of the copyright laws of the United States to the fullest extent allowed by law. To the extent any such Contract Works may not qualify as a work made for hire, Employee hereby assigns to Company all right, title, and interest in and to such Contract Works and all copyrights therein throughout the world. Employee understands that the Contract Works may be modified or altered and expressly waives any rights of attribution or integrity or other rights in the nature of moral rights (droit morale) for all uses of the Works.

(d) <u>Inventions During Employment and/or as Independent Contractor, as terms are treated the same regardless of whether hired as an employee or an independent contractor.</u> Any ideas, designs, discoveries, inventions, improvements, or developments, whether patentable or unpatentable, made, conceived, or reduced to practice by Employee, either alone or in cooperation with others, during the term of employment with the Company that (i) are made, conceived, or reduced to practice during the performance of Employee's duties and responsibilities to the Company, (ii) relate to the Company's business, or (iii) are made, conceived, or reduced to practice using the Company's funds, facilities, resources, personnel, equipment, materials or information (collectively, "Inventions") shall be and remain the sole and exclusive proprietary property of the Company.

(e) <u>Assignment and Cooperation.</u> Employee hereby grants, sells, assigns, and conveys to the Company all right, title, and interest in and to the Contract Works, Inventions, and all tangible and intangible property rights relating to or arising out of the Contract Works and Inventions, including, without limitation, any and all copyright, patent, trade secret, trademark, and other intellectual property rights throughout the world. Employee will keep accurate records of and promptly disclose to Company all Contract Works and Inventions, and Employee will cooperate with Company to seek appropriate copyright, patent, and other forms of protection for the Contract Works and Inventions as requested by the Company. Employee agrees to execute and deliver all documents reasonably requested by the Company to perfect and establish the Company's rights and interests of ownership in the Contract Works and Inventions, including without limitation inventor's declarations and recordable forms of assignment.

(f) <u>Relationship with Customers and Suppliers.</u> Employee agrees that during the period of Employee's employment by the Company and for a period of two (2) years thereafter (hereinafter the "Protected Period"), except where such actions are taken within the course and scope of Employee's employment with the Company, Employee will not, directly or indirectly, individually, on Employee's own behalf or on behalf of another or through a corporate or other business entity, (i) contact or otherwise communicate with any customer on whom Employee called, with whom Employee communicated and/or as to whom Employee provided any services or reviewed any information as a result of Employee's employment with the Company within the preceding twelve months or, where Employee's employment with the Company has terminated, in the twelve months prior to the date his employment with the Company terminated (hereinafter, a "Protected Customer"); or (ii) influence or attempt to influence any Protected Customer to divert its business to any individual, partnership, firm, corporation or other entity then in competition with the business of the Company or any subsidiary or affiliate of the Company; provided, however, that these prohibitions shall not apply to general advertisements in newspapers or other widely distributed publications, media, or mail, including Internet websites. Furthermore, during the Protected Period, except in the performance of Employee's duties as an employee of the Company, Employee shall not make any public statement or announcement or permit anyone to make any public statement or announcement that Employee is or was formerly employed by the Company where such public statement or announcement relates in any way to or arises from the actual or prospective provision of goods or services in competition with the Company; provided, however, that these prohibitions shall not apply to Employee's identification of his or her employment with the Company on any resume or job application directed to and made available solely to a prospective employer, in any application for a loan or other related documents or where otherwise approved by the Company in writing. Finally, Employee agrees that during the Protected Period, Employee will not influence or attempt to influence, directly or indirectly, suppliers of the Company not to do business with the Company.

(g) <u>Soliciting Employees.</u> Employee agrees that during the Protected Period, except where such actions are taken within the course and scope of Employee's employment with the Company, he will not directly or indirectly contact for the purpose of soliciting employment, or solicit, employ or otherwise engage any Employees of the Company to leave his/her employment with the Company to work for any business, individual, company, firm, corporation, or other entity. For purposes of this section, "Employees of the Company" shall include those individuals who have been retained by the Company as an employee, consultant or contractor to provide services on behalf of the Company within the preceding twelve months or, where Employee's employment with the Company has terminated, in the twelve months prior to the date his or her employment with the Company terminated.

(h) <u>Competitive Activities.</u> It is understood and agreed that as a result of his or her employment with the Company, Employee will be placed in a close business and personal relationship with the customers of the Company and that such relationship will develop through Employee's knowledge and use of the Company's Confidential Matters. To further ensure the confidentiality of the Company's Confidential Matters, during the Protected Period, Employee shall not directly or indirectly (whether for compensation or otherwise), alone or as a partner, associate, agent, principal, trustee, consultant, co-venturer, creditor, owner (excepting not more than 1% stockholdings for investment purposes in securities of publicly held and traded companies), representative, or in any other capacity, engage in, take any action constituting or in furtherance of, participate with or become interested in or associated with any person, firm, partnership, corporation or other entity operating within the State of Texas which is then in, or has expressed to Employee the possibility of entering into, competition with the Company.

(i) <u>Tolling of Term.</u> Employee agrees that the periods of time during which Employee is prohibited from engaging in such business practices pursuant to this Section 1 shall be extended by any length of time during which Employee is in breach of any of such covenants.

(j) <u>Reasonable Covenants.</u> Employee and the Company agree that the foregoing covenants are appropriate and reasonable when considered in light of the nature and extent of the business conducted by the Company. Should a court of competent jurisdiction determine that the scope of the covenants contained in this Agreement exceed the maximum restrictiveness deemed reasonable and enforceable, the parties intend a court of competent jurisdiction should reform, modify and enforce the provision to such narrower scope as it determines to be reasonable and enforceable under the circumstances existing at that time.

(k) <u>Remedies for Breach.</u> If Employee commits a breach, or threatens to commit a breach, of any of the provisions of this Agreement, the Company shall have the following rights and remedies, in addition to any others, each of which shall be independent of the other and severally enforceable:

(i) The right to have the provisions of this Agreement specifically enforced by any court having equity jurisdiction without the necessity of filing a bond, it being acknowledged and agreed that any such breach or threatened breach will cause irreparable injury to the Company and that money damages will not provide an adequate remedy to them; and

(ii) The right and remedy to require Employee to account for and pay over to the Company all compensation, profits, monies, accruals, increments or other benefits (hereinafter collectively the "Benefits") derived or received, directly or indirectly, by Employee as a result of any transactions constituting a breach of any of the provisions of this Agreement, Employee hereby agreeing to account for and pay over the Benefits to the Company.

Employee agrees that the existence of any claim or cause of action by Employee against the Company, whether predicated on this Agreement or otherwise, shall not constitute a defense to the enforcement by the Company of the covenants in this Section 1.

(l) <u>Successors and Assigns.</u> Employee's rights and obligations under this Agreement cannot be assigned by Employee without the express written consent of the Company, which consent shall be given or withheld within the sole discretion of the Company.

(m) <u>Publication To Third Parties</u>: Employee agrees that during the Protected Period, Employee shall inform any individual or entity that is engaged in a business that is in competition with the Company and with which Employee may seek to enter into a business relationship (whether as an owner, employee, independent contractor or otherwise) of Employee's contractual obligations under this Agreement. Additionally, during that same period of time, Employee will provide written notice to the Company of the name of any individual or entity with whom/which he or she may seek to establish, or may subsequently establish, such a relationship, the address and phone number at which such individual or entity can be contacted and, in the event that such employment or relationship is with an entity, the identity of Employee's supervisor or principal contact, which notice must be provided not later than fourteen (14) calendar days following the date that Employee first communicates with such individual or entity regarding the possibility of such a relationship. Employee further agrees that the Company shall have the right to provide a copy of the provisions of Section 1 to any third party with whom Employee may seek to enter into, or may subsequently enter into, a relationship in order to assure that the Company's rights under this Agreement are adequately protected.

2. 2. <u>ARBITRATION; WAIVER OF TRIAL BY JURY</u>.

(a) The parties agree that they may request from the other party a request that all disputes, controversies, or claims between them arising out of or relating to this Agreement, any other agreement relating hereto or otherwise arising out of or relating to the employment relationship of Employee with the

3843

Company or the termination of same, including, but not limited to, claims of discrimination, harassment and retaliation, can be submitted to, and determined by, binding arbitration. Such arbitration shall be conducted before a single arbitrator pursuant to the Employment Arbitration Rules and Mediation Procedures then in effect of the American Arbitration Association, except to the extent such rules are inconsistent with this Agreement. Exclusive venue for such arbitration shall be in Bastrop, Bastrop County, Texas. The arbitrator shall apply the laws of the State of Texas (without regard to conflict of law rules) in determining the substance of the dispute, controversy, or claim, and shall decide the same in accordance with applicable usages and terms of trade. The arbitrator shall have the authority to fashion any award and remedy available under the law governing the claims involved. The prevailing party in any such arbitration shall be entitled to recover its reasonable attorneys' fees, costs, and expenses incurred in connection with the arbitration as determined by the arbitrator where such an award would be permitted under the law governing the claims involved. Any award pursuant to such arbitration shall be final and binding upon the parties, and judgment on the award may be entered in any federal or state court having jurisdiction. These arbitration provisions shall survive the termination of this Agreement. Furthermore, the agreement to arbitrate claims shall not prevent the Company from seeking a temporary restraining order or temporary or preliminary injunctive relief from a court of competent jurisdiction to protect its rights hereunder. If the Company seeks injunctive relief, such action shall not constitute a waiver of the provisions of this agreement to arbitrate, which shall continue to govern any and every dispute between the parties including, without limitation, the right of damages, permanent injunctive relief, and any other remedy at law or in equity. Either party can deny the other party's request for arbitration.

(b) By execution of this Agreement, each of the parties hereto acknowledges and agrees that such party has had an opportunity to consult with legal counsel and that such party knowingly and voluntarily waives any right to a trial by jury of any dispute pertaining to or relating in any way to the subject of this Agreement, the provisions of any federal, state, or local law, regulation, or ordinance notwithstanding.

3.    RELIANCE AND ENTIRE AGREEMENT.  Employee understands that the Company is relying on the above representations, warranties and agreements in affording or continuing employment, and that this Agreement includes the entire understanding between Employee and the Company on the subject matter contained in it and may not be changed except in writing by Employee and by a duly authorized officer of the Company.

4.    MISCELLANEOUS.  This Agreement, the construction of its terms, and the interpretation of the parties' rights and duties shall be governed by and construed according to the laws of the State of Texas, and venue for any proceeding related hereto shall be proper and irrevocably set in Bastrop, Bastrop County, Texas.

5.    NATURE OF EMPLOYMENT.  Employee understands that this Agreement is not and shall not be construed to create any contract of employment, express or implied. This Agreement in no way modifies the "at-will" nature of Employee's employment with the Company, which permits Employee and/or the Company to terminate the relationship at any time and for any reason.

**Employees must sign the "Statement of Employee" prior to any employment.  See the Exhibit attached hereto and made a part hereof for all purposes, and/or sign the same "Statement of Employee" online form on Company Website.**

**Contact Data for:**

**Human Resources Department**

P.O. Box 1090, Bastrop, Texas 78602; or
Human Resources Ticket on Company Software
(844) 446-5841

**Fleet Manager**

P.O. Box 1090, Bastrop, Texas 78602; or
Ticket on Company Software; or

3943